**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATHEW ROBERTSON, | : | Civil No. 1:20-CV-2117 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN, | : | |
| | : | |
| Respondent. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Mathew Walter Robertson ("Petitioner" or "Robertson") seeking relief under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, §12003(b)(2), 134 Stat. 281 (2020). (Doc. 1.) For the reasons that follow, the petition will be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner Robertson is confined at the Allenwood Medium Federal Correctional Institution ("FCI Allenwood–Medium"), in White Deer, Pennsylvania. (Doc. 1.) He is serving a ninety–two month sentence for conspiracy to distribute methamphetamine imposed by the United States District Court for the Middle District of North Carolina. *See United States v. Robertson*, No. 1:17-CR-00053-UA-17 (M.D. N.C.), *electronic docket*, available at *https://ecf.ncmd. uscourts.gov* (last visited March 9, 2021). Robertson's projected release date is

May 5, 2023.  *See https://www.bop.gov/inmateloc/* (search Robertson, Mathew, last visited March 9, 2021).

Robertson filed his habeas petition on November 13, 2020, alleging that he suffers from low glucose and has been treated for epididymitis in the past.  (*Id*., p. 3.)[1]  He argues his living conditions are unsafe and violate the Eighth Amendment due to the BOP's inability protect him from the COVID–19 virus due to lack of space and inadequate air circulation.  (*Id.*, p. 7.)  Robertson stresses that he is "not asking for Compassionate Release." [2]  (*Id*., p. 8.)  He requests that the court enter an order directing "the FBOP for [an] enlargement of Home Confinement for [him] and all nonviolent inmates, people 65 and older, and people with underlying health conditions that meet the CDC guidelines, including mental health . . ., anxiety, depression, bipolar, PTSD, and any cognitive impairment [from] which one is not expected to recover." (*Id.*)

On April 3, 2020, Robertson requested home confinement under the CARES Act.  (Doc. 1, p. 2.)  Warden Howard denied his request on April 7, 2020.  (*Id.*)  He

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[2] The court takes judicial notice of the sentencing court's December 9, 2020 denial of Robertson's motion for compassionate release based on his failure to provide "anything to corroborate his health condition[s]": epididymitis, low glucose, and asthma.  *See United States v. Robertson*, No. 1:17-CR-00053-UA-17 (M.D. N.C.), Doc. 890.

did not pursue an administrative remedy challenging this determination. (Doc. 6–1, Knepper Decl. ¶ 4.)

Respondent filed a response to the Petition on December 14, 2020, arguing that Robertson failed to exhaust his available administrative remedies, the BOP's decisions regarding the designation of inmates for home confinement under the CARES Act are not subject to judicial review, and that his Eighth Amendment claim lacks merit. (Doc. 6.) Robertson filed a reply on January 20, 2021, stating he contracted COVID–19 in November 2020, and that "no amount of money will fix the damages that the Respondents have done to his health" as he now suffers from lingering respiratory issues. (Doc. 9, p. 4.)

In his reply, Robertson clarifies that, contrary to Respondent's assertions, he "is not asking the Court to order the BOP to release inmates on Home Confinement, but instead is asking the Court to order this institution to [e]xpand its use of Home Confinement for medically vulnerable inmates (including inmates' who've contracted COVID–19 and are having respiratory complications) in a way that doesn't violate the Eighth Amendment." (*Id.*, p. 2.) He argues that the "court has jurisdiction to order the BOP to [e]xpand its use of Home Confinement to make the remedy effective." (*Id.*)

Robertson believes he was denied home confinement "because he along with everyone else in the BOP doesn't meet their impossible criteria. Therefore, it

would absolutely be 100% futile to require the Petition to exhaust his remedies and more irreparable harm will result absent judicial review." (*Id.*, pp. 6–7.) According to Robertson, thus far the BOP has "been doing what's 'easy,' not what's *reasonable*" when exercising its discretion under the CARES Act.  He urges the court's intervention to require the BOP to expand its use of the CARES Act to release individuals like himself. (*Id.*, p. 3, emphasis in original.)

Simultaneous to filing his reply, Robertson filed a motion to certify the proposed class in this matter as all FCI Allenwood inmates who do not pose a threat to the community and are medically vulnerable to the COVID–19 virus as defined by the CDC.  (Doc. 10.)

### A.     BOP's Response to COVID-19.

Since 2012, the BOP has had a Pandemic Influenza Plan.[3]  *See Pandemic Influenza Plan, Module 1: Surveillance and Infection Control (Oct. 2012),* available at *https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf* (last visited March 9, 2021).  Within the past year, the BOP has modified its operations nationally in response to the COVID–19 pandemic.  (Doc. 6–1, Knepper Decl., *see*

---

[3] The court takes judicial notice of the CDC distinction between the flu and COVID–19.  The CDC states that "[i]nfluenza (Flu) and COVID–19 are both contagious respiratory illnesses, but they are caused by different viruses.  COVID–19 is caused by infection with a new coronavirus (called SARS-CoV-2), and the flu is caused by infection with influenza viruses."  *See https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html* (last visited March 9, 2021).

*also BOP COVID–19 Modified Operations Plan*, *https://www.bop.gov/ coronavirus/covid19_status.jsp* (last visited March 9, 2021).  The modified operations are designed to provide for limited inmate movement "to prevent congregate gathering and maximize social distancing" within its facilities.  (*Id*.)  To that end, movement "in small numbers," is authorized for commissary, laundry, showers, telephone use, and access to TRULINCS.  (*Id*.)  All newly committed inmates (including transferred inmates) are screened by medical staff "for COVID-19 including a symptom screen, a temperature check, and an approved viral PCR test."  (*Id*.)  Symptomatic arrivals (with or without a positive test) are placed in medical isolation; asymptomatic arrivals (with a negative test) are placed in quarantine for a minimum of 14 days.  (*Id*.)  If at the end of this period an inmate tests negative with a commercial PCR test, they can be released to general population.  Quarantined inmates with a positive test are placed immediately in medical isolation.  (*Id*.)  Inmates remain in isolation until obtaining a negative test or cleared by medical staff.  (*Id*.)  All inmates are tested again before transferring between facilities, other correctional jurisdictions, or released from BOP custody. (*Id*.)

The BOP has limited contractor access to only those providing essential services (medical and mental health care), religious worship services, or necessary maintenance on essential systems.  (Doc. 6, pp. 4–5.)  All contractors must

5

undergo a COVID-19 screening and temperature check prior to entry.  (*Id*.)  Staff

and other visitors are similarly checked.  (*Id*.)

### B. BOP's Use of Home Confinement.

The BOP has exclusive discretion to designate the place of a prisoner's

confinement.  18 U.S.C. § 3621(b).  Pursuant to this discretion, the BOP may

"place a prisoner in home confinement for the shorter of 10 percent of the term of

imprisonment of that prisoner or 6 months."  18 U.S.C. § 3624(c)(2).

On March 26, 2020, the United States Attorney General issued a

Memorandum encouraging the BOP to utilize home confinement for "at–risk

inmates who are non–violent and pose minimal likelihood of recidivism and who

might be safer serving their sentences in home confinement rather than BOP

facilities."  *Prioritization of Home Confinement As Appropriate in Response to*

*COVID-19 Pandemic*, available at *https://www.bop.gov/resources/news/pdfs/*

*20200405_covid-19_home_confinement.pdf* (last visited March 9, 2021).  When

assessing whether home confinement should be authorized, the Attorney General

directed the BOP to consider the "totality of circumstances for each individual

inmate, the statutory requirements for home confinement" and "the following non-

exhaustive list of discretionary factors:  (1) the age and vulnerability of the inmate

to COVID-19, in accordance with the CDC guidelines; (2) "the security level of

the facility currently holding the inmate, with priority given to inmates residing in

6

low and minimum security facilities"; (3) the inmate's conduct in prison; (4) the inmate's score under the Prison Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) "[w]hether the inmate has a demonstrated and verifiable re–entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility"; and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community." (*Id.*; *see also* Doc. 6, p. 6.)

On March 27, 2020, shortly after President Trump's declaration of a national emergency due to COVID-19, he signed the CARES Act into law. In part, it temporarily authorizes the Attorney General during the national emergency to "lengthen the maximum amount of time for which the Director [of the BOP] is authorized to place a prisoner in home confinement" pursuant to 18 U.S.C. § 3624(c)(2) due to the COVID-19 pandemic. On April 3, 2020, the Attorney General issued a Memorandum authorizing the BOP Director to "maximize" transfers to home confinement of appropriate inmates held at BOP facilities where the Director determined that COVID-19 has materially affected operations. *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, available at *https://www.bop.gov/coronavirus/docs/bop_memo_home_*

*confinement_april3.pdf* (last visited March 9, 2021).  The BOP was directed to continue making home confinement decisions in a careful and individualized matter that remains faithful to its duty to protect inmates in their care as well as the public.  (*Id.*)

As of March 9, 2021, the BOP has 7,512 inmates on home confinement, with a total of 22,539 inmates being placed in home confinement since March 26, 2020.[4]  *See BOP, Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic, available at https://www.bop.gov/coronavirus/faq.jsp* (last visited March 9, 2021).[5]

**C. FCI Allenwood–Medium's COVID-19 Conditions.**

As of March 9, 2021, FCI Allenwood–Medium has administered 1,033 tests to inmates and there are currently zero pending tests.[6]  *See COVID-19 Inmate Test Information*, available at  *https://www.bop.gov/coronavirus/* (search Allenwood Medium FCI, last visited March 9, 2012).  Additionally, there are presently zero inmates and staff at Robertson's facility who are COVID-19 positive.  To date, no

---

[4] This number includes inmates who have completed their sentences.  (Doc. 6, p. 8.)

[5] The court notes that Respondent cites to links on the BOP's public website which provide various COVID–19 related statistics from all BOP facilities.  The court takes judicial notice of the current statistical information provided by the BOP as it is updated daily.

[6] The BOP notes that the number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once.  The number of tests recorded per site reflects the number of persons at the facility who have been tested whether at that site or at a prior facility.

FCI Allenwood–Medium staff or inmates have died due to COVID-19, and 553 inmates and 49 staff members have recovered from COVID-19.  *See COVID-19 Cases, available at https://www.bop.gov/coronavirus/*  (search Allenwood Medium FCI, last visited March 9, 2021.)

On November 17, 2020, shortly after filing his petition, Robertson tested negative for COVID-19; however, he tested positive on November 23, 2020. (Doc. 6-1, Knepper Decl. ¶ 5.)  On December 2, 2020, 89 inmates and 6 staff members at FCI Allenwood had COVID–19.  (*Id*.)  As of December 2, 2020, Robertson was asymptomatic and continued to be routinely evaluated while in isolation.  (*Id.*)  In his reply, Robertson does not address whether he remains in isolation or is in a general population housing unit at FCI Allenwood–Medium.

### D. Robertson's CARES Act Request.

In his petition, Robertson states he filed an April 3, 2020 request for home confinement under the CARES Act.  (Doc. 1, p. 2.)  Warden Howard denied his request on April 7, 2020.  (*Id.*)  Robertson did not file an administrative remedy challenging this determination.  (Doc. 6–1, Knepper Decl. ¶ 4.)

Respondent states Robertson was considered for home confinement placement on May 8, 2020, under the five factors of 18 U.S.C. § 3624(c)(2), 18 U.S.C. § 3621(b), the CARES Act, and Attorney General Barr's memorandums. (*Id*., ¶ 4.)  The BOP determined that Robertson was not an appropriate candidate

for home confinement based on his medium security classification and a high recidivism risk PATTERN score.  (*Id.*; *see also* Doc. 6-1, p. 12.)  The BOP noted that Robertson does not suffer from a serious underlying medical condition putting him at high-risk for severe illness from COVID-19 under the CDC guidelines. (Knepper Decl. ¶ 4.)  Robertson did not appeal this determination through the BOP's Administrative Remedy Program.  (*Id.*)

Robertson has only filed one Administrative Remedy ("AR"), AR 1058801– F1, requesting home confinement.  He filed this request on November 30, 2020, shortly after filing his habeas petition.  (Doc. 6-1, p. 11.)

### JURISDICTION

Federal prisoners may use a petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, to challenge the "execution" of their sentence.  *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 243 (3d Cir. 2005) (allowing federal prisoner to bring § 2241 challenge to BOP's decision that limited placement in a community corrections center noting that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution.")  Robertson's petition does not seek to invalidate his conviction or reduce his sentence, rather, he asks that the BOP change the location and his conditions of his confinement by allowing him to serve his sentence from his home during the pandemic. Similar to the petitioner in *Woodall*, Robertson's "petition

10

crosses the line beyond a challenge to, for example, a garden variety prison transfer." (*Id.*)  Thus, Robertson's challenge to the denial of his CARES Act request, which if successful would result in him serving his sentence under home confinement, is appropriately brought under a § 2241 petition. *See Butcher v. Howard*, No. 1:20-CV-01994, 2021 WL 37994 (M.D. Pa. Jan. 5, 2021) (§ 2241 appropriate vehicle to review federal inmate's CARES Act request for home confinement).

## DISCUSSION

Respondent raises several arguments as to why Robertson's § 2241 petition should be denied:  (1) Petitioner failed to exhaust his administrative remedies; (2) BOP decisions concerning home confinement are not subject to judicial review; and (3) Petitioner cannot establish an Eighth Amendment violation.  (Doc. 6.)  The court will address each argument *seriatim*.  In addition, the court will address Robertson's motion for class certification.

### A. Robertson's § 2241 Petition Is Denied For Several Reasons.

#### 1.  Robertson Failed to Exhaust Administrative Remedies.

While § 2241 does not contain an explicit statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required a petitioner to exhaust his administrative remedies before filing a § 2241 petition. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (holding "that

prisoner's procedural default of his administrative remedies bars judicial review of his habeas petition unless he can show cause for the default and prejudice attributable thereto").  This mandate "has developed through decisional law in applying principles of comity and federalism" to claims brought under § 2241. *Schandelmeier v. Cunningham*, 819 F.2d 52, 53 (3d Cir. 1986).  Exhaustion of administrative remedies is required because:  "(1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors.  *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the requirements of the BOP's Administrative Remedy Program. 28 C.F.R. § 542.10 *et seq.*  Otherwise, the habeas petition should be dismissed. *Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981) (requiring federal prisoner to exhaust administrative remedies before brining claim under § 2241). Exhaustion is not required, however, if there is no opportunity to obtain adequate redress, if the issue presented only pertains to statutory construction, or if the prisoner makes an affirmative showing of futility.  *Gambino v. Morris*, 134 F.3d

156, 171 (3d Cir. 1998); *Schandelmeier,* 819 F.2d at 53; *Bradshaw*, 682 F.2d at

1052.

Courts within this district addressing federal inmates' request for home

confinement under the CARES Act have consistently enforced the exhaustion

requirement.  *See Powers v. Quay*, No. 4:20-CV-1519, 2021 WL 148640 (M.D. Pa.

Jan. 15. 2021); *Gonzalez v. Howard*, No. 1:20-CV-1992, 2021 WL 65989 (M.D.

Pa. Jan. 7, 2021); *Brennerman v. White*, No. 3:20-CV-1069, 2020 WL 8617622

(M.D. Pa. Dec. 10, 2020), *report and recommendation adopted in relevant part*,

No. 3:20-CV-1069, 2021 WL 682070 (M.D. Pa. Feb. 22, 2021).

The BOP has adopted a three–tiered administrative remedy procedure where

an inmate may submit complaints relating to any aspect of confinement.  28 C.F.R.

§ 542.10, *et seq.*  Generally, an inmate must first present his complaint to staff in

an attempt to informally resolve the matter.  *Id*. § 542.13(a).  If informal resolution

is unsuccessful, the inmate may file a formal written complaint to the Warden on

the appropriate form within twenty (20) calendar days of the date on which the

events which form the basis for the complaint took place.  *Id.* § § 542.14(a).  If

dissatisfied with the response, the inmate may file an appeal to the BOP Regional

Director within twenty (20) calendar days.  *Id*. § 542.15(a).  Finally, if the inmate

is dissatisfied with the Regional Director's response, that decision may be appealed

to the General Counsel (Central Office) within thirty (30) calendar days from the

13

date of the Regional Director's response.  (*Id.*)  The appeal to the Central Office is the final level of administrative review.  (*Id.*)

In the matter at bar, Robertson states his April 3, 2020 request for release under the CARES Act was denied by the Warden on April 7, 2020.   (Doc. 1, p. 2.) There is no evidence before the court that Robertson pursued an administrative remedy concerning the denial of this request or otherwise appealed this decision. On behalf of Respondent, Attorney Knepper states that Robertson was considered under 18 U.S.C. § 3621(b), 18 U.S.C. § 3624(c)(2), the CARES Act, and Attorney General Barr's Memoranda for home confinement.  The request was denied May 8, 2020 and was not appealed or otherwise challenged by Robertson.  (Doc. 6–1, Knepper Decl. ¶ 4.)  Robertson's AR 1058801–F1, requesting home confinement was filed November 30, 2020 and post–dates his filing of his habeas petition. (Doc. 6–1, p. 11.)

Consequently, Robertson failed to exhaust his administrative remedies with respect to his CARES Act request for home confinement prior to filing this action as required by *Moscato*.  Nevertheless, Robertson asks this court to excuse his failure to exhaust based on futility.  He claims the months lost to the administrative appeal process would only prolong his risk of suffering irreparable harm due to his exposure to COVID–19.  To support this assertion Robertson points out that since

14

filing his petition, he has contracted COVID–19 and now suffers from ongoing respiratory problems.  (Doc. 9.)

As noted above, courts within this district have consistently concluded that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals." *Gordon v. Warden of FCI–Schuylkill*, No. 1:20-CV-2419, 2021 WL 780762, at *3 (M.D. Pa. Mar. 1, 2021) (internal quotations and citation omitted).  Moreover, the fact that over 22,539 inmates have been placed on home confinement under the CARES Act since March 26, 2020 negates Robertson's futility argument regarding the allegedly "impossible criteria" the BOP established.  *See* Doc. 9, pp. 6–7. Moreover, the record before the court demonstrates that the BOP considered Robertson's request for home confinement, and then denied his request for relief for specific and individual reasons.  Robertson has clearly failed to exhaust his administrative remedies with respect to his request for home confinement under the CARES Act prior to initiating his habeas petition.  On this basis alone, his petition must be denied.

### 2.  The Court Does Not Have Authority to Review BOP's Denial of Home Confinement Request.

Petitioner seeks release to home confinement pursuant to the CARES Act and requests the court to order an expansion of the BOP's exercise of its discretion in granting home confinement to inmates identified as being at increased risk of

severe illness from COVID–19 as defined by the CDC.  (Docs. 1, 9.)  Even if Robertson had exhausted his administrative remedies, the court could not direct the location for service of his federal sentence because that authority is delegated exclusively to the Attorney General, and by designation, the BOP.  *See* 18 U.S.C. §§ 3621(b), 3624(c)(2); *see also Gonzalez*, 2021 WL 65989, at *4 (federal court lacks authority to transfer federal inmate to home confinement); *Frazier v. Tate*, Case No. 1:20-CV-0213, 2020 WL 8474708 (W.D. Pa. Dec. 18, 2020), *report and recommendation adopted by,* Civ. No. 20-0213, 2021 WL 461935 (W.D. Pa. Feb. 9, 2021) (same).

While the CARES Act temporarily expands the Attorney General's authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) . . ."[7] during the pandemic, CARES Act § 12003(b)(2), it does not provide federal courts with jurisdiction to direct or grant such relief.  Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of

---

[7]     **(2) Home confinement authority.**—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.  The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk level and lower needs on  home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

the BOP, and the BOP's confinement location decision is "not reviewable by any court."  18 U.S.C. § 3621(b)(5).

Moreover, it is well established that prisoners do not have an inherent constitutional right to be placed in any particular prison or place of confinement. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).  As Robertson points out, any placement under the CARES Act is not a release from custody, but a transfer to a different place of confinement where he remains in the BOP's custody.  The CARES Act does not alter the BOP's exclusive authority to make such placement decisions, even during a pandemic.

Nonetheless, while the court lacks jurisdiction to review the BOP's place of confinement decision, Robertson is able to seek judicial review if the BOP refused to make an individualized determination as to his eligibility for release on home confinement under the CARES Act.  *See Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1991).  Here, Robertson does not assert the BOP ignored his request for consideration under the CARES Act.  Robertson asserts he made a CARES Act request which the BOP denied.  The BOP denied his request after finding he was not a priority candidate to be transferred to home confinement as he has a medium security classification, high recidivism risk PATTERN score, and does not suffer from a serious underlying medical condition putting him at high risk for severe illness from COVID–19 under the CDC guidelines.  The BOP also found that

17

Robertson has served 62% of his federal term and was more than 18 months from his projected good conduct time release at the time of his request. (Doc. 6-1, p. 8.) Based on the totality of these facts, Robertson cannot show that the BOP did not exercise its discretion when individually considering, and denying, his request for home confinement. The court, therefore, will not direct BOP to reconsider his request for a transfer of his place of confinement to his home.

### 3. Robertson's Eighth Amendment Claim[8]

Robertson asserts that his conditions of confinement at FCI Allenwood–Medium violate the Eighth Amendment. (Docs. 1, 9.) Specifically, he argues that staff and new inmates are not being properly screened upon entering the facility resulted in numerous inmates testing positive for COVID–19. (Doc. 1, p. 9.) He also argues that the construction of the institution and the fact that he has a cellmate make social distancing "virtually impossible." (*Id.*) Finally, Robertson argues that the institution's HVAC ventilation system is ineffective, as it does not

---

[8]   In August 2020, the Third Circuit Court of Appeals concluded immigration detainees could challenge their conditions of confinement due to the COVID-19 pandemic under § 2241. *Hope v. Warden York Cnty.* Prison, 972 F.3d 310, 324–25 (3d Cir. 2020). In recognizing that claim, the court cautioned that it was "not creating a garden variety cause of action" but found that a condition of confinement claim to be "cognizable in a federal habeas action *only in extreme cases*." (*Id.* at 324) ("Given the extraordinary circumstances that existed in March 2020 because of the COVID–19 pandemic, we are satisfied that [petitioners] § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it, is not improper.") In light of *Hope*, and because this court intends to dismiss the petition on other grounds, the court will assume, *without deciding*, that it has jurisdiction under § 2241, to consider a federal prisoner's COVID–19 related conditions of confinement claim. *See Byrne v. Ortiz*, Civ. No. 20-12268, 2020 WL 7022670, at *3 (D.N.J. Nov. 30, 2020).

provide sufficient filtration and is not a negative pressure ventilation system.  (*Id*., p. 7.)

The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials.  U.S. Const. Amend. VIII; *Farmer v. Brennan*, 511 U.S. 825 (1994).  However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  It is a prison official's "deliberate indifference to a substantial risk of serious harm to an inmate" that violates the Eighth Amendment.  *Farmer*, 511 U.S. at 828 (internal quotations and citations omitted).  As with other Eighth Amendment deliberate indifference claims brought by prisoners, a condition of confinement claim includes both an objective and subjective component.  *Id*. at 834.  "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'"  *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (quoting *Parkell* v. *Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).  To establish deliberate indifference, the plaintiff must demonstrate that prison officials "both know of and disregard an excessive risk to inmate health and safety" or violation of the inmate's

constitutional rights. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (citations omitted).

The court recognizes the extreme logistical and practical difficulties faced by those living and working within a correctional setting during this pandemic. Based on the evidence available to the court, the BOP has instituted plans for mitigating the spread and transmission of COVID-19.  The BOP has implemented numerous preventative measures to reduce the risk of COVID–19 exposure and spread at their facilities, including FCI Allenwood–Medium.  The BOP has extensive testing and screening protocols for staff and inmates, and face masks are required to be worn where social distancing cannot be achieved.  Inmates are divided into cohorts for the purpose of limiting an individual inmate's exposure to the greater population at large.  The current absence of any positive inmate or staff cases at FCI Allenwood–Medium provides assurance that the mitigation efforts are working.

Unfortunately, Robertson, like 553 other inmates and 49 staff members, tested positive for COVID–19.  However, as the Third Circuit Court of Appeals has stated, "failure to eliminate all risk [of exposure to COVID-19 does not] establish that the Government was deliberately indifferent to [the prisoner's] serious medical needs." *Hope*, 972 F.3d at 330.  Robertson does not suggest that he did not receive appropriate care while ill or that his present medical needs are

not being addressed.  Without minimizing Robertson's concern about being

imprisoned during a pandemic, he has neither identified a sufficiently serious

deprivation that rises to the level of an Eighth Amendment violation nor

established that FCI Allenwood–Medium prison officials have acted with

deliberate indifference to his health or safety.  The court concludes that

Robertson's conditions of confinement do not amount to unconstitutional

punishment.  Thus, he is not entitled to habeas relief.

### B. Robertson's Motion for Class Certification Is Denied.

On January 20, 2021, Robertson filed a motion for class certification seeking

"home confinement and punitive and monetary damages" for "all medically

vulnerable inmate's at FCC Allenwood (excluding inmates who present a danger to

the community as determined by the 3553 factors and the 3142(g) factors."  (Doc.

10, pp. 1–2.)  Respondent did not file any response.

Federal Rule of Civil Procedure 23 governs class certification.  To certify a

class, the court must first find under Rule 23(a) that the party seeking class

certification has demonstrated the following four elements:  (i) numerosity, (ii)

commonality, (iii) typicality, and (iv) adequate representation.  Fed. R. Civ. P.

23(a).  Next, the court must find that the party seeking class certification has

shown that the proposed class satisfies one of three requirements listed in Rule

23(b).  Petitioner carries the burden of proof by a preponderance of the evidence that the class is proper.  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Here, because Robertson has not shown that he is a member of the proposed class, or entitled to relief under the CARES Act, he cannot seek class certification in this matter.  The court will deny Robertson's motion for class certification for these reasons.

## CONCLUSION

For the foregoing reasons, the court will deny Robertson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and his motion for class certification.  An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  March 10, 2021